## SIMKINS *v.* CORDELE COMPRESS COMPANY.

When, by the terms of a lease covering realty and machinery thereto attached,.
it was stipulated that the lessor should make repairs of a specified character·
upon the machinery, and that the lessee should thereafter keep the same in
good repair, and, at the termination of the lease, return it to the lessor in
good repair; and the lessee, after such stipulated repairs were made by the·
lessor, entered into possession, the lessee, notwithstanding there may have been
latent defects in the machinery so leased, at the time the latter took possession,
is, in the absence of fraud or concealment on the part of the lessor in the ex-·
ecution of the contract, chargeable with the expense of maintaining the prop-
erty in good order. Under the terms of such a contract the law applicable to·
an implied warranty, and of failure of consideration, relating to sales of per-·
sonalty, is inapplicable.

Argued June 13, — Decided July 22, 1901.

Action on contract. Before Judge Norwood. City court of·
Savannah. February 2, 1901.

The Cordele Compress Company leased its compress plant to the·
Georgia Cotton Company for a term of one year, beginning July 1,.
1898, under a contract by which the lessor agreed "to have put in
said compress a new cylinder five . . feet diameter by eight . .
feet long, in place of present cylinder five . . feet diameter by·

four . . feet long, also a piston-rod 12x5 3/16 and necessary work on same, including new steam pipe, Globe valve, one gallon sight up feed lubricator, guides etc., also an American Standard Feed Water Heater with copper coils,— all of said work to be completed by Aug. 20/98." The lessee agreed to pay the lessor $1,500 for rent, as follows: $500 September 15, 1898; $500 October 15, 1898; and $500 November 15, 1898; and "to keep the premises in good repair while continue to occupy the same (fire excepted), and to return the same to the" lessor "in good repair, except as above excepted, at the end and expiration of this lease." Simkins contracted with the lessor to become surety for the payment of the rent and the performance of the lessee's covenants. The lessee took possession of the plant and remained in possession until the machinery broke down in October, 1898. It refused to repair the machinery, refused to pay any rent further than the first instalment, which it had already paid, and turned over the plant to the lessor. The lessor then brought suit against the surety, to recover the second and third instalments of rent, besides interest, and $1,-037.34 alleged to have been expended by the plaintiff for repairs, which it was alleged the lessee should have made, under the contract. Other items were sued for, but were not relied on at the trial. The defendant in his answer denied that there was anything due the plaintiff, under the contract, and alleged that the plant was unfit for pressing cotton and was worthless, and that there was a total failure of consideration; that this was the condition of the plant when the lessee took charge of it, and this fact was then unknown to the lessee; that the plaintiff had put in a larger cylinder than was formerly used, and had allowed the other parts of the compress to remain small and weak as they were before, thus making the power of the compress out of proportion to the other parts of it, which could not stand the pressure. By amendment the defendant alleged that, at the time the compress was leased, there existed in parts of the machinery latent defects which caused the press to be unfit for the purposes for which it was intended; that the piece of machinery known as the cross-head had a hidden break in it, which caused the cross-head to break into pieces and wreck the compress, by causing the piston-rod to blow out through the top of the roof of the press. There was a verdict for the plaintiff for the rent sued for, and for the further sum of $600 and interest.

from March 15, 1899.    The defendant excepts to the overruling of his motion for a new trial.

*Chisholm & Clay, Shelby Myrick,* and *D. H. Pope,* for plaintiff in error.    *Denmark, Adams & Freeman,* contra.

LITTLE, J.    From the view we take of the rule of law which controls this case, it is unnecessary to consider in detail the twenty-five separate grounds of the motion for new trial.    It appears that the defendant in error was the owner of a certain cotton compress, and that the plaintiff in error desired to lease the premises on which it was situated, together with the compress and machinery attached thereto, and in June, 1898, the parties entered into a written contract consummating the lease for a year, containing certain terms and stipulations by which their rights in this case must be determined.    The compress company agreed to put a new cylinder of given dimensions in said press, together with other separate pieces of machinery which are fully described. The Georgia Cotton Company agreed that, when these improvements had been made, it would pay certain sums of money, specified in the lease contract, for a lease of the property for one year, and covenanted to "keep the premises in good repair while [they] continue to occupy the same (fire excepted), and to return the same to the . . parties of the first part . . in such good repair, . . at the end and expiration of this lease."    The contract is plain and unambiguous.    It is to be presumed that the Cotton Company was fully aware of the condition of the property which it agreed to lease.    Certainly, if it was not, that fact, in the absence of fraud on its part, was not chargeable to the lessor; and when it was stipulated that the owner should make certain repairs in and additions to the press, and the lessee then covenanted to keep the same in good repair and return the property to the owner in such good repair at the expiration of the lease, it in law covenanted with the owner that the repairs stipulated for would be all that the lessor would be required to make, and that the lessee would keep up the property and return it in good condition to the owner.    Hence, when the evidence showed, as substantially it did, that the repairs stipulated for had been made, the obligation on the part of the lessee to keep the property in good repair went into effect. So that it was the duty of the lessee, under the terms of the contract, to put the press in good re-

pair when, in October, it became disabled; and if it failed to do so, the owner of the press had a right to charge said lessee with the expense of such repairs. Whether these repairs were in good faith made, or whether the restoration to good order was made by distinct additions to it for which the lessee was not chargeable, were questions of fact which were settled by the verdict of the jury. In any event, it was not the right of the lessee, under the contract which it had entered into, to abandon the press when during its term it had gotten out of repair, and refuse to pay rental for the same, no fraud or misrepresentations on the part of the owner in procuring the execution of the lease contract having been alleged or shown. With these views of the relative rights of the parties under the terms of their contract, we have examined the specifications of error made in the different grounds of the motion for new trial, and are of opinion that the verdict rendered was not excessive. And while we find that certain specific portions of the charge to which exceptions are taken may be inaccurate in some particulars, in every instance where such inaccuracies exist the error is immaterial, and should not work a reversal of the judgment. Taken as a whole, the rulings of the trial judge were correct, and his expressed views of the law of the case are sound, and his instructions to the jury fully covered the law of the case and the contentions of the parties. And, as the record contains evidence sufficient to support the verdict, there was no error in overruling the motion for a new trial for any of the errors assigned therein.

*Judgment affirmed. All the Justices concurring.*